**UNITED STATES of America, Appellee,**

v.

**Jeffrey Scott WEBSTER, Appellant.**

**No. 84–5193.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1985.

Decided Aug. 2, 1985.

Rehearing Denied Aug. 29, 1985.

Scott F. Tilsen, Asst. Fed. Pub. Def., Minneapolis, Minn., for appellant.

Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Jeffrey Scott Webster appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding him guilty of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d). The district court sentenced appellant to a term of twelve years imprisonment. For reversal appellant argues that the district court erred in (1) refusing to give an alibi instruction, (2) denying his motion for mistrial following evidence of threats to witnesses, and (3) denying his motion to suppress statements he made after his arrest. For the reasons discussed below, we affirm the judgment of the district court.

The facts established at trial, when viewed in the light most favorable to the government, may be summarized as follows. On February 3, 1984, shortly before 11:00 a.m., the First Bank Plymouth, located in North Minneapolis, Minnesota, was robbed of about $19,000 by a lone man armed with a gun. During the course of the bank robbery, the robber threatened the bank's customers and employees and struck one of the bank's customers with the gun. Bank customer Mikel Barber saw the robber leaving the bank, recognized the robber and immediately called the police to report the robbery. About twenty minutes later Barber called the police again and identified appellant by name as the bank robber.

Another bank customer, Jay Bernstein, had observed the robbery in progress from the bank's drive-up window. Bernstein

1. The Honorable Edward J. Devitt, United States Senior District Judge for the District of Minnesota.

saw the robber get in an American Motors Eagle and drive away. Bernstein followed the getaway car to the 800 block of Oliver Avenue North in North Minneapolis, where the robber got out of the car, but he did not see where the robber went, and then he called police.

Local police officers responded to radio reports about the bank robbery and located the getaway car. The police officers noticed distinctive bootprints in the snow and followed the bootprints from the getaway car into an alley and through the backyard of a house located at 819 Newton Avenue North. By this time about thirty minutes had elapsed since the bank robbery. The police officers knocked on the door of 819 Newton Avenue North and, having already heard the possible identity of the bank robber broadcast over the radio, asked the woman who answered the door whether she knew appellant. The woman, who was later identified as appellant's mother, responded that appellant occasionally lived in the house next door. Appellant was in fact inside 819 Newton Avenue North at that time. The police officers investigated the house next door without success.

About four months later and after extensive efforts to locate him, the local police found and arrested appellant. The local police turned appellant over to federal authorities for processing. The federal authorities read appellant his *Miranda* rights; however, appellant refused to sign the waiver of rights form and stated that he did not want to answer any questions. According to the testimony of the FBI special agent who handled appellant's post-arrest processing, appellant volunteered the statement that he was surprised it had taken so long to find him. The FBI special agent responded that appellant had not been around any of his "normal hangouts." Appellant then stated that he had "changed his lifestyle."

At trial the government introduced the statements appellant had made during processing and Barber's positive eyewitness identification of appellant as the bank robber. Barber testified that he and appellant had been classmates through junior high and high school and that, although he had not known appellant well, he had known appellant for more than fifteen years. Barber testified that he recognized appellant's general appearance, face, walk, and voice. On cross-examination Barber stated that he had been out of the state during the months of July and August 1984 at FBI expense (following his appearance before the grand jury in June and before the trial began in late August). On re-direct Barber testified over a defense objection that he had left the state because he was afraid. On re-cross-examination Barber testified that he had learned through his sister and brother of threats against him.

The government also called as a witness appellant's mother, who testified that she was afraid of the police, that appellant had been asleep all morning and that no one had come into the house all morning.

Appellant's brother testified that appellant had said that he (appellant) had heard rumors of threats against him. In order to contradict the government's evidence and undermine the government's theory of the case, appellant also introduced evidence that a truck driver, who had been working in the 800 block of Oliver Avenue North the morning of the bank robbery, did not remember seeing any available parking spaces on the street. Appellant did not testify.

Appellant first argues that the district court erred in refusing to give an alibi instruction. The government argues that the district court did not err in refusing to give an alibi instruction because appellant failed to comply with the alibi notice requirement in Fed.R.Crim.P. 12.1[2] and be-

**2.** Fed.R.Crim.P. 12.1(a) provides:

Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the

cause there was insufficient evidence of alibi to warrant an alibi instruction.

■ First, we note that appellant has complied with the alibi notice requirement; defense counsel identified appellant's mother as a possible alibi witness in a letter to the government. Moreover, the purpose of the alibi notice requirement is to prevent surprise and undue delay. *See generally* 1 C. Wright, Federal Practice and Procedure § 201 (2d ed. 1982). The government itself called appellant's mother as a witness and cannot claim surprise under these circumstances. Second, appellant's alleged failure to comply with the alibi notice requirement is not strictly relevant to the refusal to give an alibi instruction. Fed.R.Crim.P. 12.1(d) provides that the sanction for failure to comply with the requirements of the alibi notice rule is *exclusion* of the testimony of any undisclosed witness. *See, e.g., United States v. White*, 583 F.2d 899, 901–02 (6th Cir.1978); *United States v. Barron*, 575 F.2d 752, 756–58 (9th Cir.1978).

■ In general, upon a proper request, a criminal defendant is entitled to an instruction submitting to the jury his or her theory or theories of the defense for which there is a foundation in the evidence. *E.g., United States v. Hicks*, 748 F.2d 854, 857 (4th Cir.1984). In the present case appellant requested an alibi instruction by reference to 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.08 (3d ed. 1977) (alibi). The district court refused to give the requested instruction. The government now argues that the district court did not err in refusing to give the requested alibi instruction because there was insufficient evidence of an alibi defense. The government argues that appellant's alibi defense is premised solely upon his mother's testimony that he was asleep at home during the time of the bank robbery, that appellant's mother was called as a witness by the government, and that her alibi testimony was ambiguous at best.

defendant claims to have been at the time of the alleged offense and the names and ad-

A similar argument was rejected in *United States v. Hicks*, 748 F.2d at 857. In *Hicks* the government introduced the defendant's false exculpatory statement made shortly after arrest as evidence of consciousness of guilt. The government argued that a defendant could not request a defense instruction based solely on evidence that the government offered not for its truth but for its falsity. The court rejected the government's argument and noted that two leading cases, *Perez v. United States*, 297 F.2d 12, 15–16 (5th Cir. 1961), and *Tatum v. United States*, 88 U.S.App.D.C. 386, 190 F.2d 612, 617 (1951), "speak of 'any' evidence, whether 'defense' evidence or 'government' evidence, as providing a defendant with the foundation justifying a defense instruction." 748 F.2d at 857. The court also noted that "[b]y offering evidence of what the government contends was a false exculpatory statement, the government put the truth of that statement in issue." *Id.*

We agree with the analysis in *Hicks* and hold that even though appellant's mother was a government witness, her testimony was sufficient foundation for an alibi instruction. According to appellant's mother, appellant was at home asleep at the time of the bank robbery. Although her testimony was admittedly not precise with respect to the time, we think her testimony that appellant was asleep "all morning" was sufficient to put into question whether appellant was present at the scene of the bank robbery.

■ We next consider whether the district court's failure to give the requested alibi defense instruction was harmless error. *E.g., United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir.1976). We have carefully examined the entire record and, although the case is close, we conclude that the failure to give an alibi instruction was harmless beyond a reasonable doubt. Here, the defense attorney raised the alibi defense in closing argument; the government did not mention alibi in rebuttal but

dresses of the witnesses upon whom he intends to rely to establish such alibi.

instead reviewed the eyewitness identification testimony and circumstantial evidence. Although the district court in its instructions did not expressly refer to the defense of alibi, the district court did note that a "principal issue" for the jury to decide was "whether the government has proved beyond a reasonable doubt that this defendant was the one who committed the bank robbery" and repeatedly instructed the jury that the burden of proof was on the government with reference to "every element of the crime charged," including the "obligation to show that this was the defendant who committed the crime." Finally, we note that the evidence of appellant's guilt was relatively strong. An eyewitness who had known appellant for more than fifteen years positively identified appellant by name as the bank robber. *Cf. United States v. Hicks,* 748 F.2d at 858 (only direct evidence linking defendant to crime was testimony of co-defendant who had pleaded guilty to a lesser crime in return for testifying as a government witness). There was evidence that appellant had volunteered statements shortly after his arrest that tended to show some consciousness of guilt. There was also substantial circumstantial evidence. By comparison, the evidence in support of the alibi defense, although sufficient to warrant an alibi defense instruction, was admittedly relatively weak.

 Appellant next argues that the district court erred in denying his motion for mistrial. As discussed above, on cross-examination government witness Barber testified that he had been living outside the state at government expense during the two months before appellant's trial and on re-direct, over defense objection, he testified that he had done so because he feared for his safety. On re-cross-examination Barber testified that he had learned of at least two threats against him through his sister and his brother Randy. Appellant argues that the evidence about the threats was inadmissible hearsay and prejudicial evidence of other crimes. The district court denied appellant's motion for mistrial but offered to give a limiting instruction to

the jury; appellant later withdrew his request for a limiting instruction.

Under these circumstances we can find no abuse of discretion in the denial of the motion for mistrial. We note that the subject was initially raised by defense counsel's cross-examination and, following re-direct, was further pursued on re-cross-examination. We would, however, caution all parties to avoid this sort of speculative and prejudicial inquiry about threats against witnesses. Although no witness was able to identify the source of the threats against Barber, the jury could have inferred that appellant or possibly one of his supporters had made them. However, other than the fact that Barber had heard rumors of threats against his life, the evidence about the threats was not clear and convincing. *See, e.g., United States v. Runge,* 593 F.2d 66, 69–70 (8th Cir.) (per curiam), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979).

 Appellant next argues that the district court erred in denying his motion to suppress certain inculpatory statements he made following his arrest. Appellant argues that after being advised of his *Miranda* rights, he did not waive the right to remain silent, specifically stated that he did not want to answer any questions, and made the statements in response to improper interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The government argues that the statements were volunteered by appellant during the course of routine arrest processing and were therefore not made in response to interrogation in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

As discussed above, appellant made these statements during the course of processing by federal authorities following his arrest. "A *Miranda* interrogation violation does not occur when arresting officers question a defendant only to a limited extent for data required as part of the processing normally attendant to arrest and

custody." *United States v. Kane,* 726 F.2d 344, 349 (7th Cir.1984). According to the testimony of the FBI special agent who handled the processing, he had asked appellant some personal history questions and appellant volunteered the statement that he was surprised it had taken so long to apprehend him. The special agent then stated that appellant had not frequented his "normal hangouts" and appellant acknowledged that he had "changed his lifestyle." Under these circumstances we agree that the special agent did not say anything that he should have known would be reasonably likely to elicit an incriminating response. *See United States v. Criswell,* 696 F.2d 636, 638–39 (8th Cir.1983).

Accordingly, the judgment of the district court is affirmed.