UNITED STATES of America, Plaintiff–Appellee,

v.

Robert HAIRSTON, Defendant–Appellant.

No. 94–50315.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1995.

Decided Aug. 24, 1995.

---

Morton L. Shatzkin, Encino, CA, for defendant-appellant.

Gregory W. Jessner, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA, District Judge.[*]

TASHIMA, District Judge:

This is an appeal from the judgment of conviction for violation of 18 U.S.C. §§ 2111, 2114 and 924(c)(1), and the ensuing sentence. Because we must reverse the conviction on one issue, we also address the other issues which are likely to arise on a new trial. However, "we refuse to speculate as to the outcome of this hypothetical second trial and therefore decline to address [defendant's] sentencing argument at this time." *United States v. Moorehead,* 57 F.3d 875, 877 (9th Cir.1995).

## I

## FACTS

On May 26, 1992, after having made two collections of money at the Veterans Administration Medical Center (VA), in Los Angeles, including one from the Veteran's Canteen Service (VCS), an armored courier was robbed by a gunman of the money and checks which he had collected. Defendant was interviewed the same day by the FBI. He was later charged with having committed this robbery.

Carol Fish was a government employee who worked as an administrative assistant at the VCS. She testified as to the amount of

[*] Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

cash ($5,109) and checks (approximately $3,000) she gave to the courier just prior to his being robbed. Over defendant's objection, she also testified that this money belonged to the United States.

Fish's supervisor, William Mower, had been chief of the VCS for 34 years. He was familiar with the way that money at VCS was earned, kept and deposited. Also over objection, Mower testified that VCS' money belonged to the United States, as nonappropriated funds.

Steven Swanson, the FBI agent who had interviewed defendant, testified about his pre-arrest interview of defendant, including defendant's recitation of his activities on the day of the robbery. In his interview, defendant denied any knowledge of the VA robbery. He claimed that on that day he drove his girlfriend to work in a rental car, then went to breakfast at an unidentified restaurant and returned to his girlfriend's home to take a nap. He further claimed to have awoken from his nap around one or two o'clock p.m. and discovered that his rental car was missing. Defendant claimed that he then went to the beach with an unidentified friend. The "rental car" was later identified as the getaway car used in the robbery. Defendant did not take the stand.

At the close of the evidence, the trial court denied defendant's request for an alibi instruction. It ruled that Agent Swanson's testimony of defendant's pre-arrest interview "was not an alibi, just the Defendant's statement to the police officer and that's self-serving. That's not an alibi."

The jury returned a verdict of guilty on all counts. Defendant was sentenced as a career offender to a term of imprisonment of 270 months, consisting of a concurrent sentence on Counts 1 and 2 of 210 months and a consecutive sentence on the gun count, Count 3, of 60 months. This appeal followed. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

## II

## DISCUSSION

### A. *Evidentiary Rulings*

■ An essential element of 18 U.S.C. § 2114, one of the crimes of which defendant was convicted, is that the money taken in the robbery was "property of the United States." Defendant contends that the district court abused its discretion in permitting lay witnesses to give opinion testimony of the ownership of the money taken in the robbery. Evidentiary rulings are reviewed for abuse of discretion. *United States v. Tham*, 960 F.2d 1391, 1397 (9th Cir.1991).

It is not at all clear that the testimony of Fish and Mower that the stolen money belonged to the United States was opinion testimony. *See* Fed.R.Evid. 701, Advisory Committee's Notes. Assuming *arguendo*, however, that it was, it was permissible lay opinion which satisfied the requirements of Rule 701. Both witnesses were government employees who were familiar with the operation of VCS and handled (or supervised) VCS' deposits as a part of their employment duties. Thus, these "opinions" were "rationally based on the perception of the witnesses." *Id.* The employment experience of these witnesses provides a sufficient basis from which they could rationally infer that the stolen deposits were property of the United States. The rule requires nothing more. Permitting Fish and Mower to testify as to who owned the stolen funds was not an abuse of discretion.

### B. *Alibi Instruction*

Defendant contends that the district court erred in refusing to give a requested alibi instruction.

■ We recently clarified the appropriate standard of review of a district court's denial of a defendant's requested jury instruction. In *United States v. Duran*, 59 F.3d 938 (9th Cir.1995), we held that "the standard is dependent on the issue for review." *Id.* at 941. Parties may dispute whether the required factual foundation exists to support a requested jury instruction. In such cases, we review for abuse of discretion. *Id.* However, in other instances, the parties may dispute a legal, rather than a factual, determination by the trial court. In such cases, we review *de novo. Id.* In *Duran*, we applied a

*de novo* standard, because the parties had raised a legal issue: did the instructions given adequately cover the defendant's theory of the case? *Id. See also United States v. McGeshick,* 41 F.3d 419, 421 (9th Cir.1994) ("Failure to instruct the jury on an appropriate defense theory is a question of law reviewed *de novo.*" (citation omitted)). Similarly, this case raises a question of law: must the district court give an alibi instruction when the prosecution, as opposed to the defense, introduces the evidence of alibi? Consequently, we conclude that the district court's decision not to give a requested alibi instruction is subject to *de novo* review.

■ Defendant contends that the trial court erred in refusing to give the requested alibi instruction after a prosecution witness testified about defendant's pre-arrest statement concerning his whereabouts at the time of the crime.[1]

"A defendant is entitled to have the judge instruct the jury on his theory of defense provided that it is supported by law and has some foundation in the evidence." *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990). "An alibi instruction is critical because a juror, unschooled in the law's intricacies, may interpret a failure to prove the alibi defense as proof of the defendant's guilt. To avoid this possibility, '[w]here alibi is the defense[,] a suitable *alibi* instruction *must be given when requested.*'" *United States v. Zuniga,* 6 F.3d 569, 570 (9th Cir.1993) (citation omitted) (emphasis in original) (quoting *United States v. Hoke,* 610 F.2d 678, 679 (9th Cir.1980)).

In *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir.1977), we held that "'when the accused produces testimony that he was elsewhere at the time'" of the alleged crime, and he requests an instruction as to the burden of proof of his alibi, the instruction must be given. *Id.* at 1379 (citing *United States v. Marcus,* 166 F.2d 497, 503–04 (3d Cir.1948)).

The government argues that *Ragghianti* is inapplicable because in the instant case the accused did not present the evidence of ali-

bi—the government itself introduced defendant's statement that he was napping and walking to the beach with a friend at the time the crime was committed. This evidence was introduced not to prove an alibi, but rather because of its obvious falsity.

The Ninth Circuit has not addressed whether an alibi instruction is required where the government, as opposed to the defendant, introduces the evidence that supports the alibi theory. Whereas the language in *Ragghianti* suggests that an instruction might be necessary only when "the accused produces testimony" of alibi, 560 F.2d at 1379, language in other cases, such as *Mason,* suggests that an instruction is necessary whenever the alibi defense "has some foundation in the evidence." 902 F.2d at 1438.

The only two circuits that have addressed this issue have both concluded that a trial court's refusal to give the instruction in these circumstances constitutes error. *United States v. Webster,* 769 F.2d 487 (8th Cir. 1985); *United States v. Hicks,* 748 F.2d 854 (4th Cir.1984).

The facts in *Hicks* were remarkably similar to those in the instant case. Defendants Hicks and three others were accused of armed bank robbery. When Hicks was arrested, he denied being with the other defendants at the time of the crime. He claimed he had spent the entire time with his girlfriend, except for a quick trip across the street to obtain some liquor. Neither Hicks nor the girlfriend, with whom he allegedly spent the day, testified at trial. However, the government introduced Hicks' post-arrest denials as evidence of a false exculpatory statement evidencing consciousness of guilt. Based on this evidence alone, Hicks requested an alibi instruction, which the trial court refused to give. *Id.* at 856–57.

The Fourth Circuit concluded that by offering evidence of a false exculpatory statement, the government put the truth of the statement in issue and effectively provided

---

**1.** The requested instruction was substantially similar to the Ninth Circuit model instruction. *See* Manual of Model Criminal Jury Instructions for the Ninth Circuit, Instruction 6.01, p. 84 (1992 ed.). It required the government to prove beyond a reasonable doubt "that the defendant was present at the time and place that the offense is alleged to have occurred."

Hicks with an alibi defense. Based on the general principle that "a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence," the Fourth Circuit concluded that the trial court had erred in refusing to give an alibi instruction. *Id.* at 857.

The reasoning in *Hicks* and *Webster* is sound and consistent with Ninth Circuit precedent. By offering defendant's statement that he was elsewhere at the time of the crime, even as evidence of a false exculpatory statement, the government put the truth of that statement in issue. Once the alibi issue was raised, a juror could have interpreted defendant's failure to prove his alibi as proof of his guilt. Had defendant raised the alibi defense himself, he would have been entitled to a jury instruction. An instruction is no less necessary where the government raises the issue.

■ The government argues that even if an alibi instruction was required, any error in failing to give the instruction was harmless. However, the government's position contradicts controlling Ninth Circuit authority. In *Zuniga,* the court held that failure to give an alibi instruction, where there is sufficient evidence to support it, is reversible *per se* and can never be considered harmless error. 6 F.3d at 571. "Even if the alibi evidence is 'weak, insufficient, inconsistent, or of doubtful credibility,' the instruction should be giv-

en." *Id.* at 570 (quoting *United States v. Washington,* 819 F.2d 221, 225 (9th Cir. 1987)). Thus, the trial court's refusal to give an alibi instruction constitutes reversible error.

### C. Double Jeopardy Claim

■ Defendant contends that the district court erred in entering judgment on his conviction under both 18 U.S.C. §§ 2111 and 2114 because the act for which he was convicted constituted a single offense.[2] Whether a defendant's double jeopardy rights have been violated is a question of law reviewed *de novo. United States v. Wolfswinkel,* 44 F.3d 782, 784 (9th Cir.1995).[3]

In determining this issue, we look to congressional intent; did Congress intend to punish two separate evils, or merely one? In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court laid out the following guide to statutory construction: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

Neither the Supreme Court nor this Circuit has yet addressed the question of whether judgment can be entered against a defendant under both §§ 2114 and 2111, when only

2. These statutes provide:

> Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

18 U.S.C. § 2111.

> A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of

> a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a).

3. Defendant argues that we should not review this issue under a double jeopardy standard, but merely as an issue of statutory interpretation. However, the distinction defendant makes is misguided. The entire purpose behind divining Congressional intent in cases such as these is to determine whether the trial court has violated a defendant's constitutional right not to be punished twice for the same offense. "Since Congress has full authority to define distinct offenses and to prescribe punishments for those offenses, 'the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed.' " *Wolfswinkel,* 44 F.3d at 784 (quoting *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)).

a single act was involved. However, the Fifth Circuit confronted this issue directly in *United States v. Gibson*, 820 F.2d 692 (5th Cir.1987). Defendant asks this court to adopt *Gibson.*

*Gibson* began by noting that under a mechanical application of the *Blockburger* test, §§ 2114 and 2111 define separate offenses. Section 2114 requires proof that the money taken belonged to the United States. Section 2111 requires proof that the robbery occurred on United States territory. Thus, each statutory offense requires proof of a fact which the other does not.

Nonetheless, the Fifth Circuit concluded that §§ 2114 and 2111 do not in fact constitute two separate evils that Congress sought to combat. *Gibson* noted that one element of a § 2111 offense is purely jurisdictional—the requirement that the robbery occur on federal property. "A jurisdictional fact, while a prerequisite to prosecution under a particular statute, is not in itself an evil that Congress seeks to combat." *Id.* at 698. When the jurisdictional element is subtracted, the *Gibson* court reasoned, § 2111 becomes merely a robbery statute, "comparable to a lesser included offense of [the] violation of section 2114." *Id.*

The government argues that we should reject the Fifth Circuit's analysis on the ground that it abandons *Blockburger's* bright line rule, inviting inconsistent results. We decline to follow *Gibson*, but for reasons different than that urged by the government. We disagree with *Gibson's* underlying premise that, in this case, the jurisdictional element does not address a separate evil.

*Gibson* views § 2111 as a robbery statute, treating the jurisdictional element as purely incidental. This assumption ignores the fact that Congress may have strong interests in treating crimes occurring within the jurisdiction of the United States differently from those occurring elsewhere. Thus, the juris-

dictional element of a statute like § 2111 must be given substantive weight in making the *Blockburger* analysis.

To begin with, the United States, like any other property owner, has an interest in protecting the safety of persons who enter upon its property. Strong symbolic reasons also dictate treating offenses within the jurisdiction of the United States differently. An ordinary crime may take on more significance if it occurs, for instance, in front of the White House, in a federal courtroom, in a national park, or on a military base; it injures not just the individual victim, but larger national interests. Robbery of persons within the jurisdiction of the United States may also harm other interests of the federal government; it is worth noting that § 2111 is directed at robbery within the special maritime jurisdiction of the United States, as well as its territorial jurisdiction.

Thus, we do not share *Gibson's* assumption that a jurisdictional element does not reflect a legislative intent to combat a separate evil. Because the jurisdictional element may do just that, we see no reason to alter the *Blockburger* analysis. Here, defendant's single act was not only a crime against government moneys, but also a crime committed on federal property. On the face of the statutes, there is no reason to conclude that Congress was not seeking to combat separate evils when it made that act punishable under both §§ 2114 and 2111.[4] The trial court did not err in entering judgment under both statutes.

### III

### CONCLUSION

Because there was evidence to support it, it was error for the district court to refuse defendant's request for an alibi instruction.

---

4. Ninth Circuit precedent suggests that after applying the *Blockburger* analysis, the court look at other indications of legislative intent. *Wolfswinkel,* 44 F.3d at 785. However, as *Gibson* noted, "Sections 2111 and 2114 derive from statutes virtually as old as the Republic itself." 820 F.2d at 698. The *Gibson* court was unable to locate "any written record dealing with the ques-

tion whether Congress intended that a person could be convicted under both sections for one and the same action." *Id.* Nor have the parties cited any legislative history of the two statutes. In the absence of any secondary indicium of congressional intent, we must rely exclusively on the *Blockburger* analysis.

REVERSED and REMANDED for a new trial.