685 A.2d 805

**Roy Monroe ROBERTSON**

v.

**STATE of Maryland.**

**No. 60, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 2, 1996.

Michael R. Braudes, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jerry F. Barnes, State's Attorney for Carroll County, Westminster, on the brief), for Appellee.

Submitted before HARRELL and WILNER*, JJ., and JAMES S. GETTY (retired), Specially Assigned.

---

\* Participated in the hearing and decision of this case while an active member of this Court; after being appointed to the Court of Appeals, he was specially assigned to the Court of Special Appeals and participated in the adoption of this opinion.

HARRELL, Judge.

Appellant, Roy Monroe Robertson, was convicted by a jury in the Circuit Court for Carroll County of first-degree murder and use of a handgun in the commission of a felony. The court sentenced appellant to life imprisonment, without the possibility of parole, for the murder conviction and a consecutive fifteen year term of imprisonment for the handgun conviction. Among appellant's several points of alleged error is the trial judge's refusal to grant his request for a specific jury instruction on an alibi defense. We conclude that there was sufficient evidence in the record to have compelled granting appellant's request for an alibi instruction. We further conclude that, under the facts and circumstances of this case, the trial judge's failure to propound the requested alibi instruction, or one otherwise instructing the jury as to an alibi defense, constituted reversible error. Accordingly, we shall reverse the judgment of the circuit court.

## *ISSUES*

Among the six questions presented by appellant for our review is the following, which we have rephrased as follows:

Whether testimony regarding an accused's alibi that is offered by a prosecution witness in the form of statements made to him by the accused, standing alone, constitutes sufficient evidence to warrant an alibi instruction, if requested.

Because our resolution of this question is dispositive of this appeal, we need not consider appellant's five other questions.[1]

---

1. Appellant's other contentions on appeal are the following:

I. Were certain remarks made by the trial court to appellant's counsel in front of the jury improper?

II. Did the trial court err in permitting an investigating officer to opine about appellant's veracity and the evidence against appellant?

III. Did the trial court err in denying appellant's motion to suppress statements he made to an undercover police officer placed in his cell?

IV. Did the trial court err in refusing to compel two police officers who testified for the State to disclose notes taken during their investigation?

## FACTS

On 18 February 1993, at approximately 12:20 p.m., the body of Charles Prodoehl was discovered in a snow-covered fishing area near Starner's Dam on the Monocacy River in Carroll County. A doctor who examined the body within five minutes of its discovery initially concluded that the victim had been dead for approximately eighteen to thirty hours. An investigation of the crime scene indicated that there were no signs of a struggle or robbery. The autopsy report revealed that Prodoehl had been shot twice in the head, although no defensive wounds were found on the body. Further, one of the victim's wounds had gunpowder stippling, indicating that the gun used in the shooting was touching or very near the victim's head when it was discharged.

Three individuals became immediate suspects in the murder: the victim's wife, Gina, and two of her lovers, appellant and Douglas Crouse. At the time of the murder, appellant was living in the Prodoehl home. The police investigated the murder for almost two years before charging appellant with the murder. Most of the evidence against appellant came from conversations he had with Trooper George Forsythe and John Staubitz, Jr.

Ten months after the murder, appellant was arrested on unrelated charges and incarcerated at the Carroll County Detention Center pending trial on those charges. From 31 December 1993 to 5 January 1994, Trooper George Forsythe, posing as an incarcerated murder suspect, was placed in appellant's cell. During this time, appellant confided in Forsythe that Gina and he had been having an affair and that they had planned on splitting a $100,000 life insurance policy on Prodoehl's life. When Forsythe intimated that appellant had been "duped" by Gina, appellant replied, "[s]he knows, if I go away for a long time, she will, too."

---

V. After a police officer testified that an alternative suspect had taken a polygraph test, did the trial court err in 1) failing to grant a mistrial, or 2) refusing to admit the results of the test?

The most incriminating statements appellant made to Forsythe came during a discussion in which appellant, using the rhetorical device of third-person self-reference, recounted in detail Prodoehl's murder. During this discussion, appellant told Forsythe that the murderer threw the murder weapon into Big Pipe Creek from a bridge off of Maryland Route 140. Forsythe relayed this information to the police who conducted a search of the creek and the surrounding area for the gun. The police discovered a .32 caliber gun deep in the river bed, yet within throwing distance of the bridge. A firearms expert determined that the gun was more likely than not the murder weapon.

In August 1994, appellant was sentenced on the unrelated charges and transferred to the Roxbury Correctional Institute in Hagerstown, Maryland. During his incarceration at Roxbury, appellant became friendly with a fellow inmate, John Staubitz, Jr.[2] Appellant went to Staubitz seeking help in setting forth a chronology of events surrounding the murder. Over the next several months, appellant also went to Staubitz for legal advice and assistance in writing letters about his case. Sometime in February 1995, appellant approached Staubitz in a highly anxious state. Appellant told Staubitz that the investigators had gathered more evidence than he originally thought, and that Gina might now testify against him. Appellant wanted Staubitz's help in filling in the details of his earlier chronology. Appellant then gave Staubitz a detailed and descriptive account of the murder. During this recounting of events, appellant told Staubitz three or four times that he had killed Charles Prodoehl.

During appellant's fourteen day trial, it was the State's theory that appellant shot and killed Prodoehl for a portion of the $100,000 life insurance policy on Prodoehl's life, and so that he and Gina could continue their relationship. According to the State, the crime was committed at approximately 4:30

---

**2.** John Staubitz, Jr. had been a state official before his convictions for conspiracy to commit misconduct in office, as well as several other offenses.

p.m. on 17 February 1993. In contrast, the defense theory was that Douglas Crouse, Gina's other lover, was the actual perpetrator. Appellant asserts on appeal, as he did in statements made to Sgt. Coppinger which were introduced at trial, that throughout the day that the murder allegedly occurred, he was engaged in innocuous activities: primarily at his job, at home, running errands, and at a bowling alley.

At trial, the State introduced other evidence that, during the investigation, appellant was asked for his work boots to determine if they matched the boot imprints taken from the snow near Prodoehl's body. Appellant attempted, however, to "pass off" a pair of his co-workers boots as his own. Appellant's boots were later discovered hidden in a shed on the farm where appellant worked. These boots were "similar and consistent" to the boot imprints found at the crime scene, except for "slices" on the soles of the boots. One of appellant's co-workers observed appellant slicing the soles of his boots with a knife sometime that spring.

The State also offered the testimony of Sgt. Thomas P. Coppinger, who recounted a statement appellant had given to him on 23 February 1993. In that statement, appellant claimed that he arrived home at approximately 1:45 p.m. According to appellant, around that time Prodoehl was preparing to go fishing and invited appellant to join him. Appellant declined the invitation. Appellant stated that he and the victim left the house at approximately the same time, the time being "no later than 3:00 p.m.," and each went their separate way. After leaving the Prodoehl residence, appellant went to the Sheetz store, the post office, and then to the K–Mart in Westminster so that he could rendezvous with Gina Prodoehl. Appellant met Mrs. Prodoehl at the K–Mart, but he did not go inside because he had soiled his undergarments. Next, appellant stated that he returned home, discarded his underwear, and cleaned himself and his pants in the shower. According to appellant's statement, Mrs. Prodoehl returned home with her son, Carl, at approximately 4:45 p.m. Appellant ate dinner with them and then went bowling. Appellant, however, did not testify in his own defense at trial.

At the close of all the evidence, appellant made several requests to the court for proposed jury instructions. Among those was a request that the court propound Maryland Criminal Pattern Jury Instruction Number 5:00 (Alibi). That instruction reads as follows:

Evidence has been introduced that the defendant was not there when the crime was committed. You should consider this evidence along with all other evidence in this case. Thus, in order to convict the defendant, the State must prove, beyond a reasonable doubt, that the crime was committed and the defendant committed it. MPJI–Cr. 5:00 (1995).

The court denied this request. In so ruling, the trial court reasoned as follows:

I do not feel that is a proper instruction for this case simply because I have heard no [alibi] witnesses take the stand in the Defense case. [Mr. Robertson] present[s] a theory that the Defendant can offer an alibi through statements that he made to various police officers who testified as witnesses for the State. I don't think that the instruction or the various cases which are referred to in the comment section antici- pate an alibi defense being made in the way that you wish to present that defense. There have been no alibi witnesses for the Defense in this case.

Appellant was subsequently convicted of first-degree murder and use of a handgun in the commission of a felony. From those convictions he noted a timely appeal to this Court.

## ANALYSIS

■ We begin our analysis of the sole issue that we need address by reiterating a settled proposition of Maryland law that "it is incumbent upon the court, ... when requested in a criminal case, to give an instruction on every essential question or point of law supported by the evidence." *Bruce v. State,* 218 Md. 87, 97, 145 A.2d 428, 433 (1958). *Accord Smith v. State,* 302 Md. 175, 179, 486 A.2d 196, 198 (1985); *Pulley v. State,* 38 Md.App. 682, 686, 382 A.2d 621, 624 (1978); *Couser*

*v. State,* 36 Md.App. 485, 499, 374 A.2d 399, 406–07 (1977), *aff'd* 282 Md. 125, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). In other words, a defendant is generally entitled to present his theory of the case through a requested instruction when there is evidence before the jury that supports it. *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1, 13 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). Md.Rule 4–325(c) incorporates these principles by stating, "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law." The word "shall" as employed in the rule has been consistently construed to render the directions of the rule mandatory. *Binnie v. State,* 321 Md. 572, 582, 583 A.2d 1037, 1041 (1991), *Smith,* 302 Md. at 180, 486 A.2d at 198; *Lansdowne v. State,* 287 Md. 232, 238–39, 412 A.2d 88, 91 (1980).

██ An alibi is "[a] defense that places the defendant at the relevant time of [the] crime in a different place than the scene involved...." *Black's Law Dictionary* 46 (6th ed. abridged 1991); *see Smith,* 302 Md. at 180, 486 A.2d at 198 (1985). To prove an alibi, "the testimony must cover the whole time in which the crime by any possibility might have been committed...." *Floyd v. State,* 205 Md. 573, 581, 109 A.2d 729, 732 (1954).

██ Due process requires the State to establish every fact necessary to constitute the crime with which the defendant is charged, including his criminal agency, beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Davis v. State,* 285 Md. 19, 24–31, 400 A.2d 406, 408–12 (1979); *State v. Grady,* 276 Md. 178, 181–82, 345 A.2d 436, 438 (1975). *See generally,* R. Gilbert & C. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* § 45.3 (1983). An alibi defense serves merely to negate an element of the crime, and is, therefore, not an affirmative defense. As such, the defendant does not bear the burden of proof on that issue. *Robinson v. State,* 20 Md.App. 450, 316 A.2d 268 (1974). In *Robinson,* we held that any reference in a jury instruction that the accused has the burden

to establish an alibi is improper. Judge Moylan, writing for the Court, opined:

> We think the sound view to be that an alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer convinces the fact finder beyond a reasonable doubt. Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency. *Id.* at 459, 316 A.2d at 272.

Judge Moylan's pronunciation that it is incorrect to classify an alibi as an affirmative defense was adopted soon thereafter by the Court of Appeals in *State v. Grady,* 276 Md. 178, 184, 345 A.2d 436, 439 (1975).

A few years later, in *Pulley v. State,* we held that an alibi instruction must be given by the court, if requested, when sufficient evidence was adduced at trial to raise the issue. 38 Md.App. 682, 688–91, 382 A.2d 621, 624–26. This is recognized as the prevailing rule throughout the United States. *See generally,* 4 *Wharton's Criminal Procedure* § 467 & n. 43 (Torcia ed., 13th ed. 1992 & 1994 Supp.) and cases cited therein; 2 Charles A. Wright, *Federal Practice and Procedure: Criminal 2d* § 482, at 689–91 (1992); Note, *Necessity of Alibi Instructions: The Court's Unswaying Resolve to Protect a Defendant's Right to an Alibi Instruction,* 33 How.L.J. 437 (1991). In *Pulley,* the accused's alibi testimony was corroborated and, if believed, would have been sufficient to establish an alibi for the entire period during which the State contended that the crime had been committed. 38 Md.App. at 688, 382 A.2d at 625. Consequently, we held that the accused was entitled to a separate alibi instruction. *Id.* at 690–91, 382 A.2d at 625.

The rule of *Pulley* was embraced by the Court of Appeals in *Smith v. State,* 302 Md. 175, 180, 486 A.2d 196, 198 (1985). The *Smith* court extended the scope of *Pulley,* by stating:

> Of the cases which ordinarily require the trial court to instruct the jury concerning alibi when the alibi issue is

presented by the evidence and the instruction is requested by the defendant, the overwhelming majority hold that the defendant's uncorroborated testimony, that he was at some other place at the time of the crime, is sufficient to generate the issue.

*Id.* at 180–81, 486 A.2d at 198 (internal citations and footnote omitted). The *Smith* Court concluded that the defendant's testimony, flatly stating that he was in Texas during the time that the crime was committed in Maryland, was sufficient to warrant an alibi instruction. *Id.* at 183, 486 A.2d at 200. The Court premised its holding, in part, on the tenet that an accused's testimony may not be disregarded entirely merely because he is a defendant or because there was contradictory evidence elsewhere in the case. *Id.* at 181, 486 A.2d at 198 (quoting *Hudson v. State*, 381 So.2d 344, 346 (Fla.App.1980)).

■ To furnish a basis for an alibi instruction in the instant matter, appellant relied almost entirely on the testimony of a prosecution witness, Sgt. Thomas P. Coppinger, who testified as to Mr. Robertson's own account of his activities as follows:

He said that on the [day the crime was committed] he got off work and drove home to the Prodoehl residence.... He made no stops on the way home, and he arrived home at approximately one forty-five. He said that when he went into the residence, Mr. Prodoehl was in the residence, and that [he] appeared to be going fishing....

Q. At that point in time, did he indicate anything in regard to having taken off work that day because he was ill?

A. He did mention that he was—he was feeling ill, suffering from flu-like symptoms, and I did note that Mr. Robertson was coughing quite a bit during the interview.

\* \* \* \* \* \*

He did say that he had left work because he was ... ill, but he also said it was his normal time to get off.

Mr. Robertson said he talked with William Prodoehl [who] indicated that he was planning on going fishing—and invited Mr. Robertson to go along.... Mr. Robertson indicated he did not wanna [sic.] go fishing that day. Mr.

Robertson said Mr. Prodoehl loaded his fishing gear into his truck, and Mr. Robertson, himself left the residence to run some errands. That included going to the Sheetz Store, post office and K–Mart.

Q. Did he indicate to you, in the course of that conversation, going to Sheetz Store for precisely what?

A. Cigarettes and I, I believe, a Pepsi.

\* \* \* \* \* \*

Q. Did he indicate that he went anywhere else, then, that afternoon?

A. Yes. He want to the K–Mart.... He said that he ... did meet Ms. Prodoehl there, but he did not go into the store. Apparently, he had soiled his underclothing and was unable to go in, and he said he stayed, explained that to her, and then left as [she] went into the K–Mart.

Said he left the K–Mart parking lot and returned to the [victim's residence in which he also resided] where he took a shower, and then in his words, "He threw his bloomers away and washed his pants in the shower." He remained there at the Prodoehl residence until Mrs. Prodoehl arrived home at approximately four forty-five....

... I then interjected a question to Mr. Robertson if he knew what time Mr. Prodoehl left the residence, and Mr. Robertson responded that Mr. Prodoehl left the residence approximately one minute—one minute before—or one minute after Mr. Robertson left the residence.

Q. [D]id he indicate what time that was?

A. He said it was definitely before three o'clock p.m.

Appellant contends that, under *Smith,* the aforementioned testimony furnished sufficient evidence to generate an alibi instruction. The case at bar, however, is readily distinguishable from *Smith* and *Pulley* in that Mr. Robertson, himself, did not offer any evidence of alibi either in the form of an alibi witness or with his own testimony. Instead, appellant premised his alibi defense on a prosecution witness who testified as to exculpatory statements made to him by appellant. Fur-

thermore, unlike the alibi statements in *Smith* and *Pulley*, Mr. Robertson's statements to Sgt. Coppinger were not required to run the gauntlet of cross-examination by the State's Attorney. Thus, the facts and circumstances of the instant matter require us to decide whether evidence adduced by the State supporting an accused's alibi defense is sufficient evidence to warrant presenting the issue to the jury through a specific alibi instruction propounded by the court.

Our research failed to uncover any Maryland authority addressing this particular issue. Accordingly, we sought guidance from other jurisdictions that have opined directly on this question. Our inquiry began with *United States v. Hicks*, 748 F.2d 854 (4th Cir.1984). In *Hicks*, the defendants appealed their convictions in the United States District Court for the District of Maryland for armed bank robbery. The Government's theory at trial was that Hicks aided and abetted three others by driving them to and from the bank. Accordingly, proof of his presence at the scene of the crime was an essential element. When arrested, Hicks claimed he was away from the site of the robbery when the crime occurred and denied being with the other defendants. In particular, he claimed that he spent the entire day of the crime with his girlfriend, except for a quick trip across the street to obtain some liquor. *Id.* at 856. Neither Hicks nor his girlfriend testified at trial. *Id.* at 856–57. During its case, however, the Government introduced the defendant's exculpatory statements made to the police. These allegedly false exculpatory statements were offered by the prosecution as evidence of the defendant's consciousness of guilt. *Id.* at 857.

Chief Judge Winter, writing for the court, held that the evidence adduced by the prosecution, while intended to prove consciousness of guilt by showing that Hicks made a false exculpatory statement, placed before the jury the factual question of whether Hicks was away from the site of the robbery when the crime occurred. Consequently, a sufficient foundation was laid and entitled Hicks to an alibi instruction, upon his request. The Government in *Hicks* contended that a defendant could not request a defense instruction based solely

on evidence offered by the prosecution not for its truth but for its falsity. *Id.* at 857. The *Hicks* Court dismissed this argument by stating:

> If the jury found that Hicks' post arrest statement was true, or if it raised a reasonable doubt regarding his presence at the scene of the robbery, then the jury was bound to find Hicks not guilty. Thus the government's own evidence may well have provided an effective alibi defense.
>
> \* \* \* \* \* \*
>
> While we agree that the evidence would not have been admissible if offered by Hicks, we do not think that ... only evidence admissible if offered by a defendant may serve as the foundation for a defense instruction. .... [T]he government sought to prove the statement it introduced to be untrue rather than true. *By offering evidence of what the government contends was a false exculpatory statement, the government put the truth of that statement in issue. Id.* (emphasis added).

Two other federal circuits have followed the reasoning of the Fourth Circuit in *Hicks*. One year after *Hicks* was decided, the Eighth Circuit held that even though the defendant's mother was a government witness, her testimony was sufficient to warrant an alibi instruction. *United States v. Webster*, 769 F.2d 487, 490 (1985). Recently, the Ninth Circuit held that a requested alibi instruction had to be given even though the sole evidence supporting it was introduced by the Government. *United States v. Hairston*, 64 F.3d 491, 495 (1995).

We find the aforementioned authority and its accompanying reasoning persuasive. In addition, we note in passing that the rule that appears to be crystallizing in the federal courts of appeal can cut both ways. For instance, in *Plemons v. State*, 194 Ga.App. 554, 390 S.E.2d 916 (1990), Plemons was convicted of, *inter alia*, voluntary manslaughter. On appeal, for reasons not outlined by the opinion, Plemons asserted that because he did not take the stand and present an alibi defense, it was error for the trial court to instruct the jury on alibi. At trial,

the prosecution offered the testimony of a police officer re-counting statements made by the defendant denying that he had committed the crime and claiming that he had been at a bar all day. The court sided with the state, holding that the defendant's alibi statement, although offered by the prosecution, supported an instruction on alibi. 194 Ga.App. at 556, 390 S.E.2d at 918.

■ Furthermore, the federal courts' jurisprudence on the sufficiency of evidence required to generate an instruction on theories of the defense, in general, is consistent with Maryland's. The federal courts generally hold that "[a] defendant is entitled to have the judge instruct the jury on his theory of defense provided that it is supported by law and has some foundation in the evidence." *Hairston,* 64 F.3d at 494 (quoting *United States v. Mason,* 902 F.2d 1434, 1437 (9th Cir. 1990)).[3] *Cf. Hof v. State,* 337 Md. 581, 612–13, 655 A.2d 370, 386 (1995) (a requested instruction must be given when there is evidence in the record to support it). *See also Sims v. State,* 319 Md. 540, 550, 573 A.2d 1317, 1321 (1990) (noting that Maryland and federal courts concur on the rule that a defendant is entitled to have the jury instructed on any theory of defense fairly supported by evidence, even if several theories offered are inconsistent). Consequently, we conclude that Maryland and federal requirements as to when a court must give alibi instruction are essentially the same; namely, where there is some evidence in the record to support the position that the defendant was elsewhere when the crime occurred.

---

3. *See, e.g., Brooke v. United States,* 385 F.2d 279, 284 (D.C.Cir.1967); *United States v. Wilson,* 798 F.2d 509, 518–19 (1st Cir.1986); *United States v. Bryser,* 954 F.2d 79, 87 (2d Cir.), *cert. denied,* 504 U.S. 972, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992); *United States v. Marcus,* 166 F.2d 497, 504 (3d Cir.1948); *Hicks,* 748 F.2d at 857; *United States v. Lewis,* 592 F.2d 1282, 1285 (5th Cir.1979); *United States v. Plummer,* 789 F.2d 435, 438 (6th Cir.1986); *United States v. Carter,* 910 F.2d 1524, 1531 (7th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991), *Webster,* 769 F.2d at 490 (8th Cir.1985); *United States v. Scafe,* 822 F.2d 928, 932 (10th Cir.1987); *United States v. Finestone,* 816 F.2d 583, 588 (11th Cir.), *cert. denied,* 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987).

Moreover, the fact that an alibi defense is not an affirmative defense lends further support to the notion that the defendant, himself, need not introduce alibi evidence in order to generate the basis for an instruction on the issue. In *State v. Grady, supra,* the Court, while analyzing contemporaneous Supreme Court decisions addressing the impact of the Fourteenth Amendment's Due Process Clause on the prosecution's burden of proof, made the following proclamation:

We conclude that the teachings of these Supreme Court cases apply to the issue of who has the burden of proof and what that burden is when an accused relies on an alibi as a defense. In sum, under the Federal Constitution, as well as the law of Maryland, the burden is on the State to prove all elements of the alleged crime and to do so beyond a reasonable doubt; hence, the defendant does not have to establish his alibi, not even by a minimal standard of proof. "Evidence of alibi should come into a case like any other evidence and must be submitted to the jury for consideration of whether the evidence as a whole on the issue of presence proves the defendant's guilt beyond a reasonable doubt." *Smith v. Smith,* 454 F.2d 572, 578 (5th Cir.1971), *cert. denied,* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972). *Grady,* 276 Md. at 182, 345 A.2d at 438.

 Indeed, in a case in which an accused was claiming that his confession was involuntary, the Court of Appeals noted that the sufficiency of evidence requirements for generating a requested jury instruction may differ depending upon whether the defense asserted by an accused is an affirmative one. *Hof,* 337 Md. 581, 655 A.2d 370 (1995).

[Rule 4–325(c) ] has been interpreted to require that a requested instruction be given only when there is evidence in the record to support it. That interpretation certainly is appropriately applied when the defendant has the burden of going forward, as in the case of an affirmative defense. But that is not the only context in which it has applicability. Where the State, and only the State, has a burden, a timely requested instruction on every essential question or point of law pertinent to the crime charged, must be given, whether

or not the defendant produces any evidence or even mounts a defense. *Id.* at 612–14, 655 A.2d at 386 (internal citations and footnote omitted).

As Judge Wilner aptly stated while still a member of this Court, "[t]he 'bottom line' is that, if a *prima facie* case is generated on a particular point of law, the defendant is entitled to a jury instruction on that point." *Wright v, State,* 70 Md.App. 616, 620, 522 A.2d 401, 402 (1987). When read together, *Grady, Hof,* and *Wright* clearly stand for the proposition that if the defendant does not bear the burden of persuasion on an issue, upon timely request, he is entitled to a specific instruction on that issue if there is sufficient support for it in the record, regardless of which side actually places the evidence on that issue before the jury.

Finally, our research failed to uncover any contrary authority in cases where a defendant timely requests an alibi instruction. *But see Commonwealth v. Fromal,* 392 Pa.Super. 100, 117–22, 572 A.2d 711, 720–22, *app. denied,* 527 Pa. 629, 592 A.2d 1297 (1990) (where sole evidence of alibi was presented by prosecution *and* where defendant did not pursue issue or request instruction, defendant was not entitled to alibi instructions). We hold, therefore, that when the sole evidence of an accused's alibi is adduced by the government a criminal defendant may, nevertheless, be entitled to an alibi instruction.

■ Having determined that appellant may rely on the statements of Sgt. Coppinger to support his request for a specific jury instruction, we must now determine whether those statements actually furnished sufficient support for an alibi instruction. To furnish support for an alibi instruction, the evidence must tend to show that the defendant was elsewhere when the crime he is charged with was committed. To prove an alibi, "the testimony must cover the whole time in which the crime by any possibility might have been committed...." *Floyd,* 205 Md. at 581, 109 A.2d at 732. The borders by which the sufficiency of the evidence required to generate an alibi instruction may be established have been delineated somewhat by two decisions of this Court. In

*Waddell v. State,* we held that the defendant's testimony that he was at home one and one-half to two hours prior to the asserted time of the crime was insufficient to warrant an alibi instruction because other evidence in the record indicated that the defendant's home was close to the scene of the crime. 65 Md.App. 606, 614, 501 A.2d 865, 869 (1985), *cert. denied,* 305 Md. 622, 505 A.2d 1342 (1986).

*Grady v. State,* 24 Md.App. 85, 329 A.2d 726 (1974), *aff'd* 276 Md. 178, 345 A.2d 436 (1975), lies at the other end of the spectrum. At trial, Grady was prosecuted for perverted sex practices involving three juvenile victims. *Id.* at 86, 329 A.2d at 726. The trial judge's instructions effectively compelled the defendant to account for every minute of every day for a two-to-three year period. In *Grady* we held that it was improper for the court to require the defendant to establish his alibi for the period of two-to-three years that he had known the juveniles. *Id.* at 93–94, 329 A.2d at 730. In sum, *Grady* holds that in order to establish an alibi, the defendant need not account for every second of time during which the crime by any possibility might have been committed.

■ In the case at bar, the State argues that appellant's statements to the police did not sufficiently cover the time-frame in which the murder allegedly occurred. According to the State, appellant told Mr. Staubitz that the crime occurred between 4:00 and 4:30 p.m. Further, the prosecutor argued to the jury that the murder allegedly occurred around 4:30 p.m. According to the State, "there was simply no evidence indicating where Prodoehl was around 4:30 in the afternoon, the crucial time period."

Our review of the record, however, indicates that the State's appellate contention and analysis is afflicted with some hyperbole. The State contends in its brief that "Robertson detailed that, around 1:45 p.m., Prodoehl left to go fishing." In actuality, appellant, when asked by Sgt. Coppinger what time Mr. Prodoehl left the residence, reportedly responded it was definitely before three o'clock. Sgt. Coppinger testified that appellant told him that he was home at approximately 4:45

p.m. when Mrs. Prodoehl arrived. There was also documentary evidence that the Prodoehl residence was 20.5 miles from the crime scene, an approximately twenty-eight minute drive. Consequently, there was some evidence in the record from which a jury could have inferred that appellant was not at the murder scene at 4:30 p.m., the "crucial time period." Accordingly, an issue as to appellant's alibi was raised and should have been presented to the jury in the form of an alibi instruction.

 The main purpose of a jury instruction is to aid the jury in clearly understanding the case and considering the testimony; to provide guidance for the jury's deliberations by directing their attention to the legal principles that apply to and govern the facts in the case; and to ensure that the jury is informed of the law so that it can arrive at a fair and just verdict. *Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727, 729 (1994). Accurate jury instructions are also essential for safeguarding a defendant's right to a fair trial. The court's instructions should fairly and adequately protect an accused's rights by covering the controlling issues of the case. It follows, therefore, that a criminal defendant is entitled to have presented to the jury instructions relating to a theory of defense for which there is sufficient support in the evidence, though the evidence has been impeached or is otherwise controverted by evidence of the State.

> It is not the function of the trial judge to weigh the evidence and select some cases in which to give the alibi instruction. The instruction should be given in every case where there is sufficient evidence to take the issue to the jury.

*Smith,* 302 Md. at 183, 486 A.2d at 200 (quoting *Hudson v. State,* 381 So.2d 344, 346 (Fla.App.1980)). For these reasons, we do not consider in this analysis the asserted wealth of other evidence that the State urges upon us in its brief.

 The failure to instruct the jury on a theory of the defense that is supported by some evidence removes from the jury its duty to decide a particular question of fact and effectively encroaches upon the province of the jury. Such an

encroachment impinges upon a defendant's constitutional right to a jury trial. We prefer to leave to the jury, as the trier of fact, the task of evaluating the credibility of witnesses, the weight of testimony, and the adequacy of the accused's defense theory. It is for the trier of fact to ascertain whether alibi testimony, considered and weighed as all other evidence in a case, creates a reasonable doubt of an accused's guilt. *See Jackson v. State*, 22 Md.App. 257, 263–64, 322 A.2d 574, 577 (1974).[4]

Because an alibi is not an affirmative defense, a specific alibi instruction eliminates the possibility that the jury will place the burden of proof on the defense with respect to that issue. *Pulley*, 38 Md.App. at 689, 382 A.2d at 625. If such instructions are not given, "there is a likelihood that the jury will become confused about the burden of persuasion [,]. . . ." *Id.*, at 690, 382 A.2d at 625 (citation omitted), and thereby assume that the defendant bears the burden of proving his innocence. When warranted by the facts and circumstances of the particular case, alibi instructions reinforce a guiding principle of our criminal jurisprudence that the burden is always with the State to prove beyond a reasonable doubt that the defendant was present at the scene of the crime at the time the State asserts that the crime was committed. Without such instructions, there is an inherent risk that a jury may simply weigh the defendant's alibi claim against the State's evidence and convict on a mere preponderance of the evidence. *Henderson v. United States*, 619 A.2d 16, 19 (D.C. 1992).

---

**4.** "It was Mr. Justice Frankfurter—no watery sentimentalist—who reminded us that 'The history of liberty has largely been the history of observance of procedural safeguards.' And the history of the destruction of liberty, one may add, has largely been the history of the relaxation of those procedural safeguards in the face of plausible-sounding governmental claims of a need to deal with widely frightening and emotion-freighted threats to the good order of society." Anthony G. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 354 (1974).

 A requested instruction that is otherwise applicable under the facts and circumstances of the case need not be given when it has been fairly covered in the instructions actually propounded by the court. *Tirado v. State*, 95 Md. App. 536, 622 A.2d 187, *cert. denied*, 331 Md. 481, 628 A.2d 1067 (1993). In the case at bar, the instructions propounded by the trial judge merely set forth the elements of the offense and the State's burden of proof. In *Pulley*, we held that the trial court's general instructions regarding the State's burden of proof and the presumption of innocence cannot be deemed to fairly cover the issue of alibi. 38 Md.App. at 690, 382 A.2d at 625. In *Smith*, the Court of Appeals reasoned as follows:

> The Court of Special Appeals, as well as a majority of cases throughout the country, have held that when the evidence in a criminal case generates the issue of alibi, and when the defendant requests an instruction specifically addressed to the matter of alibi, the defendant is entitled to a specific alibi instruction, and that the trial court's general instructions concerning the prosecution's burden of proof, etc., are not deemed to "fairly cover" the matter of alibi. .... 302 Md. at 180, 486 A.2d at 198.

We conclude, therefore, that the instructions actually propounded by the circuit court in the instant case did not encompass or obviate the need for an instruction embodying the defendant's theory of alibi.

 Finally, the State has cited no Maryland precedent holding that the court's failure to instruct a jury on an accused's alibi defense, when supported by the evidence, constitutes harmless error. In *Pulley*, the testimony of the defendant and other alibi witnesses, if believed, sufficiently established an alibi for the entire period during which the crime was allegedly committed. In such instances, we held that the court's refusal to grant the defendant's request for a specific alibi instruction was reversible error. 38 Md.App. at 688, 382 A.2d at 624. We have also held that it is reversible error not to instruct the jury on theories of self defense, *Bryant v. State*, 83 Md.App. 237, 246–48, 574 A.2d 29, 33 (1990), and voluntary intoxication, *Holt v. State*, 50 Md.App.

578, 580–81, 438 A.2d 1386, 1388 (1982), when the record supports such an instruction. Based on the facts of this case, we are not persuaded that the court's error was harmless beyond a reasonable doubt.

JUDGMENTS OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY CARROLL COUNTY.

JAMES S. GETTY, Judge, Specially Assigned, dissenting.

Respectfully, I dissent.

I agree fully that it is incumbent on the court, when requested in a criminal case, to instruct the jury on every essential question or point of law supported by the evidence. This case is, I would hold, clearly distinguishable from *Pulley v. State*, 38 Md.App. 682, 688–91, 382 A.2d 621 (1978), which my colleagues correctly recognize as being the prevailing rule throughout the United States relating to an alibi instruction.

In *Pulley*, the accused testified in his own defense. He accounted for his activities on the day of the murder and his testimony was fully corroborated by two witnesses. Pellucidly, an alibi instruction was generated by the evidence.

Factually, the case *sub judice* is completely foreign to *Pulley*. Appellant did not testify, neither did he produce any alibi testimony from others. I recognize that he was not required to mount a defense because an alibi is not an affirmative defense placing a burden of persuasion on the accused. If, however, the accused made no effort whatever to generate an alibi (he could have offered his exculpatory statement through Sgt. Coppinger), I would hold that the court's failure to include the precise language of Criminal Pattern Jury Instruction No. 5:00 (Alibi) is, if error, harmless.

The pattern instruction states:

Evidence has been introduced that the defendant was not there when the crime was committed. You should consider this evidence along with all other evidence in this case.

Thus, in order to convict the defendant, the State must prove beyond a reasonable doubt, that the crime was committed and the defendant committed it.

Elsewhere in the instructions, the jury was instructed on the State's burden to prove the guilt of the accused beyond a reasonable doubt; that the accused is presumed to be innocent; and that he has the right to remain silent. The instructions, taken as a whole, clearly impress upon the jury its obligation to consider *all* of the evidence before rendering a verdict. There is not a scintilla of evidence that they failed to do so.

The jury had the testimony of Sgt. Coppinger detailing appellant's initial claim that he was not present when the crime was committed, and two separate admissions by appellant, given to undercover police officers, that he committed the murder, and including the details thereof. In the details of the crime, he told his undercover cell mates where he had thrown the murder weapon into the river. A gun, purportedly the murder weapon, was recovered from the area described by appellant.

Would it have been preferable if the trial court had supplemented the standard instructions on burden of proof, reasonable doubt, and presumption of innocence by adding the innocuous words of instruction No. 5:00: "Evidence was introduced that the defendant was not there when the crime was committed. You should consider this evidence along with other evidence in this case...."? The obvious answer to that question is "Yes."

Pertinent to this case is the question whether the appellant's right to a fair trial has been impinged, or whether the jurors would have been more fully aware of their solemn duty to consider all of the evidence if the proposed instruction had been included by the court. I submit the realistic answer is "No."

I find it difficult, if not impossible, to accept that a defendant who presents no evidence of an alibi is relying upon an alibi defense. His so-called defense is nothing more than an

argument of counsel. As I understand the majority opinion, his defense was that the other suitor vying for the newly rich widow's attention was the shooter.

My learned colleagues suggest that any time there is some evidence in the record to support the position that the defendant was elsewhere when the crime occurred a court must give an alibi instruction when requested. If true, we may end up with inmates yelling, "I was not there," as they are being escorted to their prison cells. Without any other evidence, an alibi instruction will be given because an untold number of inmates can be produced at trial attesting that they heard the defendant's fervent denial that he was not present when the victim, who had gone fishing, was executed for a share of a $10,000 life insurance policy.[5]

---

5. *Hoc quidem perquam durum est, sed ita lex scripta est.* (This indeed is very hard, but such is the written law.)