885 A.2d 339

## Marcus D. MARTIN a/k/a Karim Azim Razzaq

v.

## STATE of Maryland.

## No. 1675, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Oct. 28, 2005.

Allison E. Pierce (Nancy S. Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel HOLLANDER, SHARER, MOYLAN and CHARLES E., JR. (Retired, Specially Assigned), JJ.

SHARER, J.

Marcus D. Martin, aka Karim Azim Razzaq,[1] appeals from convictions for first degree murder, conspiracy to commit first

---

1. The trial court accepted defense counsel's proffer that Martin had legally changed his name from Marcus D'Angelo Martin to Karim Azim Razzaq.

degree murder, first degree assault, use of a handgun in the commission of a crime of violence or felony, wearing and carrying a handgun, conspiracy to commit robbery with a dangerous or deadly weapon, robbery, and theft. The verdicts were returned after a jury trial in the Circuit Court for Baltimore City.

Razzaq was sentenced to life in prison for the first degree murder conviction and to a consecutive term of 20 years for the use of a handgun in the commission of a crime of violence. The court also imposed 20 year sentences each on the conspiracy to commit murder, conspiracy to commit armed robbery, and armed robbery counts, each to run concurrent with the other and with the murder and handgun sentences.

Razzaq's timely appeal presents for our review the following issues, which we have recast:

I. Whether the trial court's failure to instruct the jury on the charge of conspiracy, and to provide an alibi witness instruction, constitutes plain error.

II. Whether the trial court abused its discretion in denying the defense motion for a mistrial.

III. Whether the conviction for conspiracy to commit robbery should be vacated.

For the reasons expressed below, we decline to note plain error with respect to the trial court's instructions. We shall affirm the trial court's refusal to declare a mistrial. We concur with the parties that the conviction for conspiracy to commit robbery is duplicative and must be vacated.

## BACKGROUND

Razzaq does not contest the sufficiency of the evidence. Accordingly, we need only recite a summary of the facts that gave rise to this prosecution, or that may be necessary to the resolution of issues raised in this appeal. *See Whitney v. State*, 158 Md.App. 519, 524, 857 A.2d 625 (2004).

On February 9, 2002, Craig Pope was found shot to death in his Baltimore City home. Two men were implicated in the

shooting: Xavier Evans and appellant. Evans and Razzaq had originally visited Pope to buy drugs. After they left the house, they discussed the idea of returning to rob and shoot Pope. Unfortunately for Pope, they executed their plan, and him.

On March 26, 2002, a grand jury sitting in the Circuit Court for Baltimore City returned four indictments charging Razzaq and Evans each with a variety of offenses arising out of the murder and robbery of Pope. Evans, for his part, pleaded guilty to first degree murder. In consideration of his plea, he agreed to testify against Razzaq in exchange for a life sentence, with all but 20 years suspended. We shall later review Evans's testimony as it pertains to our discussion of the lack of a jury instruction on the offenses of conspiracy.

Razzaq went to trial on June 18, 2003, and on June 23 the jury returned guilty verdicts on all counts. His motion for a new trial was denied, and he was sentenced on August 28, 2003. This timely appeal followed.

## DISCUSSION

### *I. Whether the trial court's failure to instruct the jury on the charge of conspiracy, and to provide an alibi witness instruction, constitutes plain error.*

Razzaq complains of the trial court's failure to instruct the jury on the offense of conspiracy and the court's failure to provide an alibi witness instruction. Recognizing that his trial counsel neither requested such instructions, nor objected to the trial court's failure to give them, he nevertheless urges us to note these mistakes as plain error.

The trial court, indeed, failed to instruct as to the two conspiracy charges and did not provide an alibi witness instruction.[2] The sole reference to the conspiracy charge was in

---

2. The State suggests that the failure to instruct on the crime of conspiracy was harmless because the prosecutor fully explained the elements of the offense in closing argument. Even were we satisfied that the prosecutor had done so, such would not substitute for an instruction

the court's discussion with the jury of the verdict sheets. Razzaq asserts that this oversight constitutes a violation of his due process rights because, with the failure to so instruct, "the jury could not have found the requisite elements of the conspiracy charges beyond a reasonable doubt." With respect to the absence of an alibi witness charge, Razzaq, citing this Court's decision in *Robertson v. State,* 112 Md.App. 366, 386, 685 A.2d 805 (1996), asks us to note plain error because, "[w]ithout such instructions, there is an inherent risk that a jury may simply weigh the defendant's alibi claim against the State's evidence and convict on a mere preponderance of the evidence."

### *Plain Error*

The failure to object before the trial court generally precludes appellate review, because "[o]rdinarily appellate courts will not address claims of error which have not been raised and decided in the trial court." *State v. Hutchinson,* 287 Md. 198, 202, 411 A.2d 1035 (1980); *see also* Md. Rule 8–131(a). "[I]t is the extraordinary error and not the routine error that will cause us to exercise the extraordinary prerogative [of reviewing plain error]." *Williams v. State,* 34 Md. App. 206, 212, 366 A.2d 399 (1976) (Moylan, J., concurring). "Plain error is 'error which vitally affects a defendant's right to a fair and impartial trial[,]' " and an appellate court should " 'intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial.' " [3] *Richmond v. State,* 330 Md. 223, 236, 623 A.2d 630

---

from the court. *See Williams v. State,* 322 Md. 35, 47, 585 A.2d 209 (1991) (counsel's argument did not serve to correct the omission of the requested instruction); *Taylor v. Kentucky,* 436 U.S. 478, 488–89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) (arguments of counsel cannot substitute for instructions by the court).

**3.** The Supreme Court has often articulated a threshold "plain error test" under Federal Rule of Criminal Procedure 52(b):

"Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,'

(1993) (quoting *State v. Daughton,* 321 Md. 206, 211, 582 A.2d 521 (1990), and *Trimble v. State,* 300 Md. 387, 397, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)). "[P]lain error review tends to afford relief to appellants only for 'blockbuster[ ]' errors." *United States v. Moran,* 393 F.3d 1, 13 (1st Cir., 2004) (quoting *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.1987)).

■ In assessing whether to note, and perhaps to correct, an unpreserved issue, "[t]he touchstone remains our discretion." *Williams, supra,* 34 Md.App. at 212, 366 A.2d 399; *see also, e.g., Claggett v. State,* 108 Md.App. 32, 40, 670 A.2d 1002 (1996); *Stockton v. State,* 107 Md.App. 395, 396–98, 668 A.2d 936 (1995); *Austin v. State,* 90 Md.App. 254, 268, 600 A.2d 1142 (1992).

Indeed, this Court recently iterated that "even the likelihood of reversible error is no more than a trigger for the exercise of discretion and not a necessarily dispositive factor." *Morris v. State,* 153 Md.App. 480, 513, 837 A.2d 248 (2003), *cert. denied,* 380 Md. 618, 846 A.2d 402 (2004). Reversible error "is assumed, as a given, before the purely discretionary decision of whether to notice it even comes into play." *Perry v. State,* 150 Md.App. 403, 436, 822 A.2d 434 (2002).

To underscore the discretionary nature of plain error review in most instances, even where this court has exercised its discretion to do so in another case, Judge Moylan emphasized in *Morris* that

the discretionary decision of an appellate panel to notice plain error is totally *ad hoc* and a decision by one particular panel on one particular occasion to notice plain error is by no means precedentially binding on subsequent panels on

and (3) that 'affect[s] substantial rights.' " *Johnson v. United States,* 520 U.S. 461, 466–467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) quoting [*United States v.*] *Olano,* [507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)].
*United States v. Cotton,* 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). This threshold inquiry has likewise been observed by this Court. *See, e.g., Lawson v. State,* 160 Md.App. 602, 630, 865 A.2d 617 (2005).

subsequent occasions, even when similar subject matter seems to be involved. A particular exercise of discretion may be inspired by any number of reasons, some of which have nothing to do with the subject matter of the jury instruction in question.

*Morris,* 153 Md.App. at 517–18, 837 A.2d 248; *see also, e.g., Evans v. State,* 28 Md.App. 640, 650–51, 349 A.2d 300 (1975) (exercise of discretion prudent in view of importance of issue beyond confines of that appeal), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976).

Maryland Rule 4–325(e) governs appellate review of unpreserved error in the context of allegedly improper jury instructions, and provides:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

We have pointed out that the Rule's salutary function is to provide the trial "court an opportunity to correct the instruction before the jury starts to deliberate." *Allen v. State,* 157 Md.App. 177, 183, 850 A.2d 365 (2004).

The Court of Appeals has "defined 'plain error' in a jury instruction as 'error which vitally affects a defendant's right to a fair and impartial trial' and [we] have limited our review under the plain error doctrine to circumstances which are 'compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.'" *Miller v. State,* 380 Md. 1, 29, 843 A.2d 803 (2004) (quoting *State v. Hutchinson, supra,* 287 Md. at 203, 411 A.2d 1035) (further citations omitted).

" 'Maryland cases abound with instances where the plain error doctrine was advanced for a failure to instruct and [the

Maryland Courts] subsequently denied review.'" *Conyers v. State,* 354 Md. 132, 171 & n. 6, 729 A.2d 910 (quoting *Hall v. State,* 292 Md. 683, 691 n. 3, 441 A.2d 708 (1982)), *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999). We agree with the First Circuit that " '[t]he plain error hurdle, high in all events, nowhere looms larger than in the context of *alleged instructional errors.'" United States v. Sabetta,* 373 F.3d 75, 80 (1st Cir.) (emphasis added) (quoting *United States v. Paniagua–Ramos,* 251 F.3d 242, 246 (1st Cir.2001)), *cert. denied.,* 543 U.S. 968, 125 S.Ct. 433, 160 L.Ed.2d 338 (2004).

### Failure to Provide a Conspiracy Instruction

The Court of Appeals has declined to review a trial court's failure to *fully* instruct the jury as to a particular crime as charged. In *Reynolds v. State,* 219 Md. 319, 149 A.2d 774 (1959), the defendant had been convicted of keeping a disorderly house and related offenses. The trial court's jury instructions were incomplete with respect to one charge. Reynolds did not object at trial, but averred on appeal that

the trial judge, when he undertook to give advisory instructions, had an obligation to both the jury and the defendant to define and explain the offenses charged in the several counts of the indictment, particularly the difference between such counts and the meaning of the technical words and phrases used therein; and that he had a further duty to state precisely and accurately the essential elements of each offense.

*Id.* at 324, 149 A.2d 774. Speaking for the Court, Judge Horney observed:

The State frankly admits that the trial court did not fully instruct the jury as to the particular offenses charged in the indictment ... But, the State insists that because the defendant failed to make a timely objection to the court's instructions, she is precluded from raising the objection here. We must agree.

But the defendant, admitting that she did not seasonably object pursuant to Maryland Rule 739 f, insists that this Court should of its own motion invoke the provisions of Rule

739 g and take cognizance of and correct what she asserts is
a plain error material to her rights. We do not agree. In
this case it is obvious that the errors complained of are such
that the trial court could have—and undoubtedly would
have—corrected if the defendant had interposed her objec-
tions, as she should have done, before the jury retired to
consider its verdict.

*Id.* at 324–25, 149 A.2d 774 (citations omitted).

Razzaq, anticipating the State's reliance on *Reynolds*, as-
serts that the Court was unclear with respect to the nature of
the instruction that was in fact given, or the offense at issue.
We agree that the jury was not "fully charged" in *Reynolds*.
There is some ambiguity as to whether the trial judge failed
completely to instruct on an offense, or left out some elements
so as not to have "fully charged" the jury, thus rendering an
incomplete instruction. Nonetheless, we consider the holding
of *Reynolds* to be pertinent to the issue of whether an
appellate court *must* correct an error in the failure to instruct
the jury, in whole, with respect to an offense, where that error
had not been called to the attention of the trial court.

■ Razzaq also refers us to *Monk v. State,* 94 Md.App.
738, 619 A.2d 166 (1993), to support his contention that the
failure to instruct the jury on all of the elements of a crime is
an error of constitutional dimension. The reference to *Monk*
is well-placed, for such an instructional error will often impli-
cate due process concerns. An accused on trial enjoys a due
process right to "proof beyond a reasonable doubt of every
fact necessary to constitute the crime with which [the accused]
is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068,
25 L.Ed.2d 368 (1970).

■ Even errors with constitutional impact may be subject
to waiver. " 'No procedural principle is more familiar to this
Court than that a constitutional right[ ] . . . may be forfeited
in criminal as well as civil cases by the failure to make timely
assertion of the right before a tribunal having jurisdiction to
determine it.' " *United States v. Olano,* 507 U.S. 725, 731, 113

S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)).

Our decision in *Monk,* however, provides no comfort to Razzaq because defense counsel in that case had in fact objected to the trial court's instruction. Judge Alpert concluded for this Court:

> Because it is essential that the State prove the arrest was lawful [for the offense of resisting arrest], the trial judge erred in refusing, *over defense counsel's objection,* to instruct the jury on the issue. . . . In fact, the judge specifically instructed the jury *not* to consider the legality of the arrest. . . . In addition, when the jury requested the judge to reinstruct them on the offense [of resisting arrest], he reiterated his original instruction verbatim.

*Monk, supra,* 94 Md.App. at 742, 619 A.2d 166 (emphasis added).

### *Faulty Instruction Versus No Instruction*

▇▇▇ A distinction has been drawn between the failure of a trial judge to instruct on an element of an offense and total neglect to mention an offense in charging the jury. We must determine at the outset whether either oversight would constitute structural error requiring automatic reversal, regardless of lack of preservation. If so, we would have no occasion to entertain an appeal to plain error.[4]

In *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held that a constitutionally deficient reasonable doubt instruction cannot be harmless error. In the wake of *Sullivan,* the United States Court of Appeals for the Ninth Circuit had the occasion

---

4. Structural error affects the "framework within which the trial proceeds[,]" and is not subject to harmless error scrutiny. *See Whitney v. State,* 158 Md.App. 519, 536 n. 8, 857 A.2d 625 (2004) quoting *Redman v. State,* 363 Md. 298, 303–04 n. 5, 768 A.2d 656, *cert. denied,* 534 U.S. 860, 122 S.Ct. 140, 151 L.Ed.2d 92 (2001) (in turn quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

to examine its effect in a situation that is apposite to the case at hand:

> Applying *Sullivan* and other Supreme Court authority, we have held that omitting instruction on, or otherwise failing to submit to the jury, *one* element of an offense is reversible per se.... We recognized that harmless error analysis was not feasible in the face of such omission[.]
>
> \* \* \*
>
> The error in this case is considerably more egregious[.] ... The jury here was not given instruction (oral or written) on *any* element of the counts Harmon challenges. This error is more akin to that in *Sullivan*, because the entire basis for the jury verdict was tainted; we cannot be sure that the jury made *any* of the requisite factual findings.
>
> As the district court properly concluded, this error requires automatic reversal. The error undoubtedly affected Harmon's constitutional right to a proper jury verdict.... We find it difficult to imagine a more fundamental or structural defect than allowing the jury to deliberate on and convict Harmon of an offense, for which it had *no* definition.... There is no way we can determine the extent to which Harmon's convictions were actually affected by the failure to instruct, because we simply cannot tell how the jury reached its decision.

*Harmon v. Marshall,* 69 F.3d 963, 965–66 (9th Cir.1995) (per curiam) (citations omitted).

Razzaq has also drawn our attention to a number of earlier cases in which courts have held the total lack of an instruction to require a reversal. *See, e.g., State v. Miller,* 184 W.Va. 367, 400 S.E.2d 611, 612–13 (1990) (jury not even told what crimes for which defendant was tried); *Gardner v. State,* 185 Ga.App. 184, 363 S.E.2d 843 (1987). In *Byrd v. United States,* 342 F.2d 939, 940–42 (D.C.Cir.1965), the United States Court of Appeals for the District of Columbia reversed a conviction for robbery where the district court, as instruction, merely read the robbery statute to the jury. That was error, the court explained, because not all of the elements of common law

robbery were codified in the statutory provisions that had been recited to the jury.

We are mindful of additional authority for the proposition that a jury charge omission dictates automatic reversal. In *People v. Duncan*, 462 Mich. 47, 610 N.W.2d 551 (2000) (per curiam), for example, the Michigan Supreme Court reversed a conviction for use of a firearm in the commission of a felony where the trial court neglected to instruct the jury on any of the elements of that offense. The error was unpreserved. The Michigan court nevertheless decided to rule:

> We issue this opinion to iterate a bright line rule: It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt.

*Duncan, supra*, 610 N.W.2d at 552.

In *Messer v. State*, 96 P.3d 12, 15 (Wyo.2004), the Wyoming Supreme Court stated that "a failure to give an instruction on an essential element of a criminal offense is fundamental error[.]" Similarly, a Florida intermediate appellate court has stated that " '[t]he failure to instruct on a particular element of a crime is fundamental error when that element is disputed at trial.' " *Cazeau v. State*, 873 So.2d 528, 529 (Fla. 4th DCA 2004) (quoting *Jones v. State*, 857 So.2d 969, 970 (Fla. 2d DCA 2003)).

Taking the other view, the United States Court of Appeals for the First Circuit aptly disposed of a challenge based on a trial court's failure to instruct the jury on an element of a parental kidnapping charge. Judge Howard wrote for the federal court:

> Raheman concedes that he did not offer a contemporaneous objection to the instruction. Nevertheless, he contends that the court's failure to instruct the jury on the "parental rights" element of the offense was a structural error which requires "automatic reversal."

Raheman's "automatic reversal" argument is wrong because the alleged error is not "structural." The Supreme Court has limited the definition of a structural error to those errors that "infect the entire trial process." *See Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The Court has classified an error as structural in only "a very limited class of cases." ... Moreover, the Court has expressly held that the error Raheman alleges—that the instructions omitted an element of the offense from the jury's consideration—does not constitute structural error. *See Neder v. United States*, 527 U.S. 1, 7–11, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Just this term, the Supreme Court unanimously reiterated that "the trial court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis" and therefore is not a structural error. *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam) (citing cases).

*United States v. Fazal–Ur–Raheman–Fazal*, 355 F.3d 40, 48 (1st Cir.), *cert. denied*, 543 U.S. 856, 125 S.Ct. 173, 160 L.Ed.2d 93 (2004) (footnotes and citations omitted); *see also Neder v. United States*, 527 U.S. 1, 13–15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

In the final analysis, we agree with the Eleventh Circuit, which was unpersuaded by the Ninth Circuit's view in *Harmon*, that an omission of an instruction, such as that in the case at hand, would not entail structural error. That court recently said:

These Ninth Circuit precedents are not persuasive, however. The Ninth Circuit clearly relied upon earlier precedents in which it had found instruction error as to one element of an offense to be reversible *per se*. *See Harmon, supra*, 69 F.3d at 965 (citing cases). The Supreme Court, however, has held that the omission of instructions as to one element of an offense does not preclude harmless error review. *Neder, supra*, 527 U.S. at 9, 119 S.Ct. at 1833 ("Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an

element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.").

In light of *Neder, Harmon* is not persuasive.

*Parker v. Secretary for Dept. of Corrections,* 331 F.3d 764, 781 (11th Cir.2003), *cert. denied,* 540 U.S. 1222, 124 S.Ct. 1513, 158 L.Ed.2d 159 (2004).

 We are not convinced that the failure to instruct on an offense constitutes fundamental, or structural, error that would mandate reversal. Rather, we conclude that the instructional errors in the case before us are more appropriately subject to harmless error review,[5] and our discretion to note plain error.

This is a discretion that we shall not exercise on this record. The evidence of Razzaq's guilt is abundant. Kenny Hopewell had known Pope, the victim, for 20 years. He visited Pope on the day of the murder, and saw two men at the Pope residence, one of whom was Razzaq. That evening, Hopewell went out with Razzaq to a bar, only to return to Pope's home about 15 minutes later. Hopewell then left with his girlfriend at about 8:00 p.m. to go to the movies, leaving Pope in the company of Razzaq and Evans. Hopewell did not return to Pope's house that evening, and learned about the shooting the next morning from police. He said that Razzaq possessed a handgun.

Erica Singletary, Pope's girlfriend, testified that two men, one later identified as Razzaq, visited Pope on the day of the shooting. After she left the house in the evening to attend a baby shower, Singletary called Pope to inform him that she had safely reached the party. During this call she learned

---

**5.** "A constitutional error is harmless when 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Mitchell v. Esparza,* 540 U.S. 12, 17, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam) quoting *Neder v. United States,* 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (in turn quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

that the two visitors were still at the house. Singletary returned to Pope's house near midnight and went around to the back to gain entry because no one answered the front door. She noticed that a patio door was open. Once inside, she saw Pope on the floor and called the police.

Razzaq's companion that day, Evans, entered a plea in return for his testimony. Evans recalled that he and Razzaq went to Pope's house at around 10:30 a.m. to "get some ready rock." [6] Singletary.was there with Pope. At some point in the afternoon, Hopewell showed up. Evans recounted that he knew Hopewell from jail.

Evans testified that he and Razzaq planned to buy drugs and then rob Pope. While Razzaq and Evans were out looking for something to eat, they discussed a plan for robbing and killing Pope. Because he had the only handgun at that point, Evans agreed to fire the weapon. After they returned to the house, Razzaq gave a signal and Evans shot Pope in the back of the head. Evans removed a handgun from Pope's pocket and handed that weapon to Razzaq, who then fired two rounds into Pope. They fled through the back of the residence with money, drugs, and Pope's handgun. To exit the house, because they did not have a key, they opened the rear sliding door and kicked out the screen. It was this scene that Erica Singletary encountered when she returned from the baby shower. She had remarked on the stand that one would need a key to exit the house.

The evidence of Razzaq's guilt in this case is stark. *See Morris, supra,* 153 Md.App. at 523, 837 A.2d 248. There is no sound basis, on this record, that moves us to exercise our discretion to note plain error.

In sum, we hold that the total failure to instruct on a charged offense is not structural or fundamental error mandating reversal. Rather, such failure is subject to plain error

---

**6.** "Ready rock" is a form of cocaine. *See Pagotto v. State,* 127 Md.App. 271, 363, 732 A.2d 920 (1999), *aff'd,* 361 Md. 528, 762 A.2d 97 (2000).

**206**

review. On the record before us, we decline to exercise our discretion to conduct such review.

### Alibi

▇ Razzaq also urges us to note as plain error the failure to instruct with respect to an alibi witness. Lila Stewart testified that Razzaq was at her home at about 8:00 p.m. on the night of the murder and that she watched him then go to his father's house. We decline the invitation.

First, Razzaq failed to request an alibi instruction. *Ware v. State*, 360 Md. 650, 694, 759 A.2d 764 (2000), *cert. denied*, 531 U.S. 1115, 121 S.Ct. 864, 148 L.Ed.2d 776 (2001). In any event, the failure to provide an alibi witness instruction on this record does not constitute plain error. *See, e.g., United States v. Lillard*, 354 F.3d 850, 855 (9th Cir.2003). This is especially so in view of the trial court's instruction that the State was bound to prove Razzaq's presence at the scene, and the general admonition that the State is required to establish guilt beyond a reasonable doubt. *See, e.g., State v. Swint*, 364 N.J.Super. 236, 835 A.2d 323, 329 (2003). Razzaq's reliance on *Robertson v. State* to establish a review for plain error is misplaced, because in that instance the defense had requested an alibi instruction. *Robertson, supra*, 112 Md.App. at 374, 685 A.2d 805.

### II. Whether the trial court abused its discretion in denying the defense motion for a mistrial.

▇ Razzaq argues that the State engaged in prosecutorial misconduct in closing argument and that the court abused its discretion in denying his motion for mistrial. He specifically complains that the prosecutor referred to facts outside of the record. We discern no abuse of the trial court's considerable discretion.

During his closing, the prosecutor referred to a statement Razzaq provided to police:

[PROSECUTOR]: ... The physical evidence doesn't lie. It completely corroborates everything Xavier Evans said.

But since we're lucky enough to hear from the defendant through his prior statements, let's take a closer look at that. First of all, how do we even get the defendant talking to the police? He makes some kind of abduction—

[DEFENSE COUNSEL]: Objection. Objection.

THE COURT: Approach.

[Bench conference]

[DEFENSE COUNSEL]: Your Honor, there's no evidence in this case that my client made any abduction report. Move for a mistrial *or jury instruction.* [emphasis added]

THE COURT: I'll hear from you.

[PROSECUTOR]: There was. Detective Massey testified that he filed a report that he unsubstantiated.

THE COURT:—

[PROSECUTOR]: I thought he used the word abduction.

[DEFENSE COUNSEL]: I'm pretty sure he didn't say that.

[PROSECUTOR]: I know he used the word abduction. I thought that's the word Detective Massey used.

THE COURT:—sustain the objection—request for a mistrial. . . .

The bench conference ended, and the court provided the following instruction:

THE COURT: Ladies and gentlemen, I'm sustaining the objection. There is no such evidence before this Court as to an abduction report. There was a discussion and evidence as to receiving information which the detective found unsubstantiated, but no such evidence as such. Please disregard the comment as made by counsel. [ ]

[PROSECUTOR]: I apologize to Your Honor. I apologize to you ladies and gentlemen of the jury.

The defense soon after sought a mistrial for a second time, complaining of another purported misstep by the prosecutor in

closing argument[7]:

> [DEFENSE COUNSEL]: Your Honor, I'm going to ask for a mistrial again. Counsel has now made two statements that are totally outside the evidence. There is no evidence of who wrote this [an Evans recantation statement assertedly handwritten by Razzaq]. I think this is grounds for a mistrial. He's arguing things that aren't in evidence and his rebuttal is all new matter.

It is well established that counsel is afforded considerable latitude in making closing argument, provided that argument takes substance from the evidence or draws reasonable inferences supported by the record. *See Degren v. State,* 352 Md. 400, 431, 722 A.2d 887 (1999). Even should counsel stray over the line of propriety, "[r]eversal is [nevertheless] only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." *Id.* (quoting *Jones v. State,* 310 Md. 569, 580, 530 A.2d 743 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988)).

This Court has pointed out three factors that "must be considered in order to determine whether a prosecutor's remarks are prejudicial to the accused[ ] . . . (1) the closeness of the case; (2) the centrality of the issue affected by the error; and (3) the steps taken by the trial judge to mitigate the effects of the remarks on the jury." *Hagez v. State,* 110 Md.App. 194, 226, 676 A.2d 992 (1996). With respect to the first two elements, we disagree with Razzaq that the State's case was weak, or that his credibility[8] was so central a factor that the improper reference to the false "abduction report" was a crucial and prejudicial remark.

---

7. In his brief, Razzaq concedes that "the record demonstrates that defense counsel was mistaken in his assertion that the second statement was also 'outside the evidence[.]' "

8. Two taped statements made by Razzaq, to Detective Massey, were played for the jury. The statements were made on February 26, 2002 and March 1, 2002. Appellant did not testify.

Finally, the steps taken by the trial court further undermine Razzaq's assertion that any prejudice that flowed from the closing requires reversal. The first alleged instance of improper closing argument prompted an immediate curative instruction as requested by counsel, as well as an equally forthright apology from the prosecutor.

The decision as to whether to grant a mistrial is committed to the sound discretion of the trial court and will be overturned only for an abuse of that discretion. *See Carter v. State*, 366 Md. 574, 589, 785 A.2d 348 (2001). Our cases consistently hold to the principle that "[t]he grant of a mistrial is considered an extraordinary remedy and should be granted only 'if necessary to serve the ends of justice.' " *Id.* (quoting *Klauenberg v. State*, 355 Md. 528, 555, 735 A.2d 1061 (1999) (citations omitted)); *see also Hudson v. State*, 152 Md.App. 488, 521–22, 832 A.2d 834, *cert. denied*, 378 Md. 618, 837 A.2d 928 (2003).

Razzaq has failed to demonstrate that a mistrial was warranted.

### III. Whether the conviction for conspiracy to commit robbery should be vacated.

Razzaq stands convicted of both conspiracy to commit murder and conspiracy to commit robbery. He argues, and the State agrees, that he can be convicted of only a single common law conspiracy. Based on our independent review of the record, we agree.[9]

A single conspiracy may give rise to numerous target offenses. The Court of Appeals has emphasized that:

Ordinarily, a single agreement to engage in criminal activity does not become several conspiracies because it has as its purpose the commission of several offenses.

---

9. Confession of error does not abrogate our duty to conduct an independent review. *See Chiarella v. United States*, 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 1370 (1951) (per curiam); *see also Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380 n. 2, 744 A.2d 549 (2000).

Therefore, under Maryland common law, irrespective of the number of criminal goals envisioned by a single criminal agreement, the conspirator is usually subject to but one conspiracy prosecution. *See generally* [1] P. Marcus, *Prosecution and Defense of Criminal Conspiracy Cases* §§ 4.01 to 4.02 (1984) (discussing scope of conspiracy).

\*　　\*　　\*

 A conspiracy remains one offense regardless of how many repeated violations of the law may have been the object of the conspiracy.

*Mason v. State*, 302 Md. 434, 445, 488 A.2d 955 (1985).

That reasoning applies in these circumstances. Thus, we hold that the record proves the existence of but a single common law conspiracy. Accordingly, we shall vacate Razzaq's conviction for conspiracy to commit robbery. *See Jordan v. State*, 323 Md. 151, 161, 591 A.2d 875 (1991).

**CONVICTION AND SENTENCE FOR CONSPIRACY TO COMMIT ROBBERY VACATED; REMAINING JUDGMENTS AFFIRMED; COSTS ASSESSED 2/3 TO APPELLANT AND 1/3 TO THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**